Caldwell, J.,
dissenting.
I cannot give my assent to the decision which the majority of the court have made in this case. 1 do not believe that the *494 court have any legal authority for so deciding. The decision is claimed by the court to be authorized by the 125th section of the act providing for the punishment of crimes and misdemeanors of the third class. That statute provides that if any person of the age of fourteen years or'upwards, shall be found on the first day of the week, commonly called Sunday, sporting, rioting, gambling, hunting, fishing, shooting, or at common labor, (works of necessity and charity only excepted,) he or she shall be fined, etc.
Now do the facts of this case come within the provisions of this law ? The pleadings are silent on the subject of the contract being made on Sunday; all that we have on the subject is, that two of the witnesses speak of the place where the contract was made, and merely state, without any explanation whatever, that it was on Sunday. All we know then about the' matter, is, that the parties met at the house of a neighbor, that one of them was about to remove from where he resided, and remarked that he would have to sell his corn; the other offered a price that he was willing to take, and the contract was consummated. It does not appear that any one was disturbed by any show or bustle of business, or that it was done under such circumstances as to wound the feelings of any one, who might consider the act a desecration of the day; in the peculiar language of the statute, they were not “ found ” by any such person, as appears from the evidence. Indeed, the circumstances of the case, to my mind, go to preclude the idea of any such exhibition or disturbance. The court bring this act within the terms of the statute, “ common labor.” What is the object of the statute ? We do not suppose that any part of its object was to punish persons for not observing the Sabbath in a particular way; this would be persecution, and as the legislature have no power under our constitution to pass such a law, it would be a nullity. How far, then, can the legislature go in this matter ? No farther than to protect that portion of the community who observe the day as hallowed to religious exercises, from disturbance and annoyance. I think *495 a careful examination of the statute will. show, that the legislature have been careful to keep within this bound. To say that two men making a contract, in a house, on Sunday, could be made amenable to a criminal law providing a punishment for those who are found at common labor, is certainly giving a penal enactment a very liberal construction. It would certainly be a very awkward account of the matter, if a person who had witnessed this sale of the corn, were to describe it by representing the parties as being engaged in common labor. It is a contradiction to the terms as used in common parlance. It is said, however, that the term common labor means ordinary business or employment. Now what the ordinary business of these men was, we do not know. One of them, it appears, had raised a small crop of corn. Now if this man had been found in his field at work on Sunday, or had been on that day engaged in gathering his corn, or had been engaged in other common business on his farm, he would have been engaged at common labor. The most reasonable conclusion that can be drawn from the facts we have before us is, that these men met together that day, at their neighbor’s house, and that the contract then happened to be made, because they had so far observed the Sabbath, as to abstain from their usual employment.
It is said that a man keeping open his store and selling goods, or engaged in business of that kind, would come within the provisions of that statute. That, however, differs very widely from a case of this kind: that is a case of a continuous engagement in ordinary business, of common labor, both of the mind and body, and so presents itself to the public, and thus produces the evil sought to be remedied by the statute. The statute, we think, never could be intended to operate in a single instance of the union of two minds in making a contract. It would, I think, be rather a singular spectacle to see two men seized and taken before the proper authority, and punished for making a contract on Sunday, when no disturbance nor annoyance was given to any one, by the act. And yet the court *496 (and as I think by a strained construction of the statute) have virtually decided that such is the law. If an act such as making a single contract, on Sunday, that in its nature is not calculated to disturb the peace and quiet of the day, can be made the subject of legal supervision and penal enactment, it can only be on the ground that it is abstractly wrong, immoral. If the legislature can punish an act of this kind, they can another, and their power to persecute, to punish for whatever, they may consider abstractly wrong, is unlimited. It is the glory of our country that the right of belief in .any particular religious tenet without molestation on account thereof, is granted to every one; but this principle can only be preserved by extending it equally to the unbeliever. It is the same great indivisable principle that alike protects humanity, the birth-right of the whole, which each with equal reason may claim, should he believe any religious creed whatever; or should he disbelieve the whole.
We have been referred to the decisions of the court for authority upon this subject. Those decisions are all made on statutes essentially differing from our own. We know that many authorities can be found, both ancient and modern, that have gone as far as this decision in enforcing the observance of the Sabbath. We do not propose to examine them for two reasons: one is, the one mentioned above, that the statutes on which they are made, differ from ours. Another is, that the pernicious and ruinous consequences of enforcing religious principle by legal enactment have been so well tested, and are so apparent, that any decision of the kind should not be regarded. Indeed, if I were to attempt to present the error into which I think the court have fallen in this decision, in its strongest light, I would do it by a reference to the action of the courts and legislative bodies, not only in Europe, but in some parts of this country, in its early settlement, in attempting to enforce the observance of the Sabbath by law. It always has, and always will produce, a pharisaical and hypocritical observance of a religious duty, and creates a v spirit of cen *497 sorious bigotry, and tends powerfully to destroy every religious feeling of the heart.
I know of but one reported decision in this state ; that is the-case of Swisher’s Lessee v. Williams’s Heirs, Wright’s Reports 754. The court there say “ the objection that the deed was executed on Sunday will not avail you. Both parties partook equally of the sin of violating the Sabbath, and the law does not require of us to enable either party to add to the sin,, by breaking the faith pledged on that day, and commit a fraud, out of assumed regard for the Sabbath day.” This decision is directly in point, and I think good law. I think the decision of the court on the circuit was right, and should have been affirmed.